YOUNGS, Respondent, vs. WEGNER, Appellant, and others, Respondents.

*March 20—June 17, 1914.*

*Foreclosure of mortgage and of land contract: Continued possession by mortgagor or purchaser: Status and rights: Homestead: Alienation: Land contract as mortgage: Failure to raise question on trial: Waiver.*

1. The continued possession by a mortgagor, or a purchaser under land contract, of the premises described in the mortgage or contract, after foreclosure and sale under the mortgage, or after foreclosure of the land contract and lapse of the time allowed for redemption, resolves itself into a tenancy which is in subordination to the rights of the owner claiming under such foreclosure.

2. Even if such mortgagor or purchaser, by remaining in possession and making payments after completed foreclosure, acquired a homestead right or interest in the premises, that in no way impaired the right of the legal owner to deal with the property as such, and he could make a valid transfer of his legal title and interest to a third person without the signature of the wife of such occupant, and such homestead right would be subordinate to the title so conveyed.

3. Such a transfer does not involve any alienation by the husband of the property or any interest therein to which the homestead right extends, within the meaning of sec. 2203, Stats.; neither does a contract for sale of the land by the grantee of such legal owner to the claimant of the homestead right; and upon default of the latter to make the payments stipulated in such contract the rights of himself and wife may be barred by foreclosure.

[4. Whether or not the land contract last mentioned should, under the facts and circumstances of this case, be given the effect of a mortgage for the purpose of foreclosure, is not decided, it being considered that the point, not having been raised in the trial court, was waived by the parties.]

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

*J. E. Wildish,* for the appellant.

For the respondent *Youngs* there was a brief by *Kanneberg, Cochems & Wolfe,* and oral argument by *H. O. Wolfe.*

For the respondents *Western Securities Company, Hansen, Dixon, Kersey,* and *Borst* the cause was submitted on the brief of *Otto R. Hansen.*

The following opinion was filed April 9, 1914:

SIEBECKER, J.    The plaintiff brought this action for strict foreclosure of a contract given by her to John W. Wegner on the 19th day of February, 1909, for the purchase of the premises therein described.    The property thus conveyed was the homestead of John W. Wegner and his wife, *Julia Wegner,* prior to and on February 11, 1896, when they mortgaged it to secure the payment of a loan from the Wisconsin Trust Company.    This mortgage was foreclosed by action, and the defendant *Julia Wegner* was made a defendant with her husband.    Judgment of foreclosure was rendered March 23, 1898, a sheriff's sale under this judgment took place one year thereafter, and a sheriff's deed issued to the Wisconsin Trust Company which was recorded June 1, 1898.

. On September 7, 1898, the Wisconsin Trust Company gave a land contract to *C. J. Dixon* for $10,210, the amount of the foreclosure judgment with interest and costs.    At this time John W. Wegner paid on the land contract as part payment thereon the sum of $3,210.

On June 4, 1900, the Wisconsin Trust Company quitclaimed to *Dixon.*    On the same day *Dixon* gave a mortgage to the Wisconsin Trust Company to secure the sum of $7,000. No written or oral contract was entered into on this occasion between *Dixon* and John W. Wegner, *Dixon* evidently taking title for Wegner's benefit.

On December 12, 1904, the Milwaukee Trust Company, as successor to the Wisconsin Trust Company, assigned its $7,000 mortgage to one Rockwell.

On January 9, 1905, Rockwell commenced foreclosure action against *Dixon,* John W. Wegner, and his wife, *Julia Wegner,* by personal service of summons and complaint, and

on March 7, 1905, obtained judgment of foreclosure and sale. On April 23, 1906, sheriff's sale under this foreclosure judgment to the *Western Securities Company* as purchaser, of which the defendant *Otto R. Hansen* was at that time an officer.

May 21, 1906, the *Western Securities Company* entered into a land contract with John W. Wegner for the purchase of the premises for a consideration of $8,036. John W. Wegner paid $3,036 before January, 1907, at which time the *Western Securities Company,* on account of Wegner's default to make further payment under the contract, commenced an action against John W. Wegner and *Julia Wegner,* his wife, to foreclose said land contract, and on September 27, 1907, judgment foreclosing all right and interest held by the Wegners in the premises under the land contract was rendered, and it was adjudged that there was $3,851.19 due on the contract, and provided that John W. Wegner and *Julia Wegner* have the right to redeem therefrom within ninety days. There was no redemption from this foreclosure.

On October 7, 1908, the *Western Securities Company* by warranty deed conveyed the premises to *Claude V. Kersey.* On the same day *Claude V. Kersey* and wife gave a mortgage to *Charles L. Borst* to secure payment of $4,000, and conveyed the premises immediately thereafter to *Otto R. Hansen* subject to this mortgage. From September 27, 1907, the day of the entry of the foreclosure judgment on the contract of the *Western Securities Company,* John W. Wegner for himself and wife carried on negotiations with *Hansen* with the object of redeeming from such foreclosure judgment; but at no time was there a redemption therefrom.

On February 19, 1909, *Hansen* gave a quitclaim deed of the premises to the plaintiff, *Kate Youngs,* subject to the $4,000 mortgage given by *Kersey* to *Borst.*

In the *Western Securities Company's* foreclosure action on

its land contract of May 21, 1906, personal service was had on both John W. Wegner and his wife, *Julia Wegner.* At the expiration of the period of redemption from the judgment in this action, to wit, December 27, 1907, Wegner and wife had failed to redeem, and the title vested absolutely in the *Western Securities Company.*

Wegner had paid the interest on the mortgages and some of the taxes on the property during this term of years, and the owners and mortgagors allowed him and his wife to live there without payment of any rent. He had paid various sums of money on the different land contracts under which he had possession of the property at different times, and in February, 1909, there remained against the property the $4,000 mortgage held by *Borst* and the amount due *Hansen.* The property was considered worth about $10,000. *Hansen* then offered Wegner that if he could pay the amount due aside from the $4,000 mortgage, he, *Hansen,* would convey the premises by quitclaim deed to whomsoever Wegner should direct, subject to this mortgage. Thereupon Wegner arranged with *Kate Youngs,* the plaintiff, through her husband, that she loan him $2,500 upon the condition that, when the amount due *Hansen* be paid him, he, *Hansen,* was to give her a quitclaim deed of all his interests and title to the premises, subject to the $4,000 *Borst* mortgage, and the further condition that *Mrs. Youngs* convey by land contract to Wegner, conditioned upon his paying to her the $2,500 with interest at seven per cent. at the expiration of one year. Pursuant to this arrangement *Hansen* conveyed the property by quitclaim deed to *Mrs. Youngs,* subject to the mortgage, and she gave Wegner the land contract and $2,500 in money, of which *Hansen* was paid $771.74. Upon compliance with the condition of this land contract *Mrs. Youngs* was to deed Wegner the property subject to the $4,000 mortgage held by *Borst.* Wegner defaulted in paying plaintiff the $2,500 and interest as agreed.

The plaintiff brought action to foreclose on the land con-

tract, and after testimony was taken, but before judgment was rendered, the case was reopened upon application of *Julia Wegner,* and the court ordered the other defendants in the case to be made parties to the action. The pleadings filed raised an issue as between *Julia Wegner* and the plaintiff, claiming that the premises in question were the homestead of herself and John W. Wegner and that she had never consented nor joined in the transfers by *Hansen* to the plaintiff and from the plaintiff to her husband nor in the mortgage given by *Kersey* and wife to *Borst,* and that they were therefore void. The plaintiff amended her complaint to ask for reformation of the contract between her and Wegner so that it would represent the actual agreement of the parties, inserting in it the stipulation that she was to convey under the contract to Wegner subject to the $4,000 mortgage held by *Borst.*

The circuit court rendered a judgment in favor of the plaintiff for payment of the $2,500 and accrued interest and costs and for the foreclosing of all the right and title in the premises of John W. Wegner and *Julia Wegner,* his wife, and that they be barred unless they or either of them pay the plaintiff the amount adjudged due her with interest and costs within four months from the day of notice to them of entry of such judgment. Neither John W. Wegner, *Julia Wegner,* his wife, nor any other person has paid or caused the amount to be paid to the plaintiff pursuant to such judgment.

The circuit court held that the plaintiff, *Kate Youngs,* is the owner of the fee title to the premises and that the claim of the defendant *Julia Wegner* to a homestead right in the premises is not sustained. The record shows that *Julia Wegner* was a party defendant in the action of foreclosure on the original mortgage and in the action brought by *Rockwell* as assignee to foreclose the mortgage from *Dixon* to the Wisconsin Trust Company and in the action brought by the *Western Securities Company* to foreclose on the land contract it gave Wegner; and that all the right, title, and interest in and to the premises vested in John W. Wegner and *Julia Wegner,*

his wife, were foreclosed and barred in each of such actions, and that the title to the premises became vested in the purchasers at the mortgage foreclosure sales and finally vested in the *Western Securities Company* upon default of John W. Wegner and *Julia Wegner,* his wife, to redeem on or before December 27, 1907, from the judgment foreclosing and barring their rights and interest in the premises.

It is urged that the transfers of the property on October 6, 1908, by deed from the *Western Securities Company* to *Kersey,* and the mortgage by *Kersey* and wife to *Borst* to secure the payment of $4,000, and the deed from *Kersey* and wife to *Hansen,* were made at the request and under an agreement with John W. Wegner, by which he acquired an interest in the property to which a homestead right in the premises extended. The circuit court, however, found upon the evidence in the case:

"That no written or oral agreement or promise of any nature whatsoever was made by said *Otto R. Hansen,* acting either as agent of the *Western Securities Company* or in his own behalf, granting to said John W. Wegner, or *Julia Wegner,* his wife, any right, title, or interest to the premises in question."

We cannot say that this finding of the court is against the evidence and it must stand as a verity in the case. It is manifest that *Hansen,* John W. Wegner, and the mortgagee, *Borst,* dealt in the matter in entire conformity with this finding of the court, which establishes the legal title to the property in *Hansen,* subject to the $4,000 mortgage given to *Charles L. Borst.* Under these circumstances the possession of the premises by Wegner and wife resolves itself into a tenancy which is in subordination to the rights of the owner of the property.

In February, 1909, there remained unpaid the mortgage of $4,000 held by *Borst.* The circumstances indicate that John W. Wegner prior to February 19, 1909, had paid on *Hansen's* claim an amount which reduced it to an unpaid

balance of $771.74, and that *Hansen*, upon payment of this
sum to him, indicated a willingness to transfer his interest
and title to the property to any person acceptable to Wegner.
It is manifest that the transaction between the parties up to
this stage of their negotiations had not impaired *Hansen's*
legal ownership of the property, and if John W. Wegner, or
he and his wife, had acquired any rights in the property,
they were subordinate to the absolute legal ownership of *Han-
sen*.   It is contended in behalf of *Julia Wegner* that she and
her husband, under the circumstances shown, acquired such
an interest in the premises under the payments made by
John W. Wegner prior to February 19, 1909, to the *Western
Securities Company* and *Hansen* in part payment of the
amount owing by Wegner under the judgment of Septem-
ber 27, 1907, foreclosing the land contract, as to acquire a
homestead right therein.   If it be assumed that such an in-
terest and right was acquired by John W. Wegner and his
wife, that in no way impaired the right of *Hansen* to trans-
fer all his legal right, title, and interest to the property to
the plaintiff, *Kate Youngs*, who under such transfer acquired
all his right and title, and whatever rights and interest the
Wegners had acquired was at all events subordinate to her
legal rights as purchaser from *Hansen*, in whose place she
stands, and enabled her to deal with the legal title and in-
terests as absolute owner.   It is claimed that the statute, sec.
2203, inhibits and renders void such transfer after the home-
stead right attached to the property, and that if the Wegners
acquired this right the transfer from *Hansen* and *Mrs. Youngs*
was void because it was made for John W. Wegner's benefit
and against the rights of *Julia Wegner*, his wife.   This stat-
ute prescribes how conveyances of land or any estate or inter-
est therein may be made, and provides:

"But no mortgage or other alienation by a married man of
his homestead, exempt by law from execution, or any inter-
est therein, legal or equitable, present or future, by deed or
otherwise, without his wife's consent, evidenced by her act

of joining in the deed, mortgage, or other conveyance, shall be valid or of any effect whatever, except a conveyance from husband to wife."

The husband under this statute is disabled from conveying the property or any interest in property to which the homestead right extends. As a matter of fact, the husband, John W. Wegner, has made no conveyance of any interest in this property after the mortgage of February 11, 1896. The claim of *Julia Wegner* that the conveyances of the legal title to *Hansen* and from *Hansen* to *Kate Youngs* were in substance and fact conveyances by John W. Wegner, is not sustained by the record. It appears that he did not acquire the title after he was divested thereof in the foreclosure proceedings in the various actions, nor was he legally entitled to enforce conveyance to him of the legal title. But it is argued that his homestead right extended to his interest in this property acquired by the payments he made on the claims against it, and that he and his wife continually occupied it as a home for many years before the commencement of this action. Assuming, without deciding, that he acquired an interest in the premises by reason of such payments and that the homestead right extended thereto, this could in no legal way extend it so as to impair the right, title, and interest vested in *Hansen* and the plaintiff under their legal ownership. Such a homestead right would of necessity be subordinate and subject to the rights of the legal owner, and if the assertion of these legal rights cuts off the rights Wegner thus acquired, that puts an end to all alleged homestead claim resting thereon. Under the land contract between *Kate Youngs* and John W. Wegner, which is sought to be foreclosed in this action, there was no alienation of any interest in this property by Wegner. It conferred upon Wegner the right to acquire the legal title and interest *Mrs. Youngs* had in the premises upon condition that he repay her the sum of $2,500 with interest within one year from its date. Upon his default she was entitled to foreclose the right, title, and interest he acquired thereby and

be awarded possession of the premises upon such conditions as the court deemed just. The making of this land contract operated in no way to affect any right or interest Wegner or his wife then had in the premises.

True, re-entry by this action to foreclose any rights acquired under it will oust Wegner and wife of their possession, but that proceeding accomplished only what the plaintiff was entitled to do as owner of the premises before the contract was made. Under the facts and circumstances shown, the conclusions of the trial court to the effect that *Kate Youngs* on February 19, 1909, for a valuable consideration, acquired the legal title to the premises subject to the *Borst* mortgage, and that the legal and equitable rights and interest acquired by John W. Wegner and wife to the premises under the land contract given by the plaintiff to John W. Wegner have become forfeited through the default of Wegner to pay the plaintiff as the contract provides, are correct.

Whether or not, under the facts and circumstances shown, the contract given from plaintiff to Wegner should be given the effect of a mortgage for the purpose of this foreclosure action, was not litigated and must be deemed to have been waived by the parties. The court properly awarded judgment foreclosing and barring John W. Wegner and wife of all their rights and interest in and to this property.

We consider that the court properly permitted the plaintiff to amend her complaint for reformation of the contract to express the agreements of the parties and that reformation thereof was properly awarded by the court. We find the findings fully cover the material facts of the case, and that the record is free from reversible error.

*By the Court.*—The judgment appealed from is affirmed.

TIMLIN, J., dissents.

A motion for a rehearing was denied, with $25 costs, on June 17, 1914.