EHLERS, Administratrix, Respondent, vs. GOLD and another, Appellants. [Two appeals.]

*January 11—March 14, 1922.*

*Pleading: Amendment: Discretion of court.*

Where a liability insurer, joined as a defendant with an automobile driver in an action for injuries to and the subsequent death of plaintiff's husband, defended the action, the insurer's attorney representing both the insurer and the insured, and no concealment was practiced upon the insurer and no claim made by it that it was not liable because the injuries had been inflicted by a car substituted for that described in the policy until late in the course of the trial, the denial of an application after new trial ordered to allow an amendment to enable the insurer to plead that its policy did not cover injuries inflicted by the substituted car, was within the discretion of the court.

APPEALS from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Affirmed on both appeals.*

This was once before this court and is reported in 169 Wis. 494, 173 N. W. 325. We shall not restate the facts here, but the statement and opinion will be in the nature of a supplement to the case as reported in 169 Wis. 494.

*Horace B. Walmsley* of Milwaukee, for the appellant *Gold.*

*J. Elmer Lehr* of Milwaukee, for the appellant *Automobile Liability Company.*

*Charles T. Hickox* of Milwaukee, for the respondent.

The following opinion was filed February 7, 1922:

ROSENBERRY, J. On behalf of the appellant *Gold* it is contended that, it appearing that there was in the rear of *Gold's* car another car following upon which there were lighted lamps which sufficiently lighted the street, the finding of the jury that *Gold* was not in the exercise of ordinary care in the control and management of his car should be set aside. We shall not take up the evidence in detail, but a careful examination convinces us that there was ample evidence to sustain the verdict of the jury and that the trial court correctly denied the motions made by the defendant *Gold* to change the answers to the special verdict. Upon this trial the jury found that the collision occurred after 5:45 p. m. on October 12, 1916, and upon the car of the defendant *Gold* there were not displayed lamps giving a reasonably bright light in the direction in which the automobile was going; that the failure to display such lights was the proximate cause of the injuries to the deceased, Ehlers; that the defendant *Gold* failed to exercise ordinary care in the operation and management of his automobile at and immediately prior to the time that John Ehlers was injured; that the failure of the defendant *Gold* to exercise ordinary care in the operation and management of his auto-

mobile was the proximate cause of the injuries to John
Ehlers; that John Ehlers was not guilty of contributory
negligence; and assessed the damages to the estate of John
Ehlers, exclusive of pain and suffering, at $779, pain and
suffering $1,000, pecuniary injury sustained by the widow
as the result of the death of John Ehlers $7,000. Upon
motion for a new trial the amount assessed for the widow's
pecuniary loss was reduced by the court to $5,000, and judg-
ment entered accordingly. It is contended that the dam-
ages are still too large. The verdict having been approved
by the trial court, it is considered that it should not be dis-
turbed in this case.

The *Automobile Liability Company* was made a defend-
ant, and, as appears in the report of the case in 169 Wis.
494, 173 N. W. 325, upon the first trial the *Liability Com-
pany* moved to amend its answer for the reasons there set
out. The trial court denied the motion on the ground that
the application for the amendment was not timely, and this
disposition of the matter by the trial court was approved by
this court. Prior to the commencement of the second trial
the *Liability Company* again moved the court for leave to
amend its answer and the motion was again denied and
judgment was rendered against the *Liability Company*,
from which it appeals.

It appears that the car which *Gold* was driving at the
time of the accident was a new car of the same make, type,
and description as that upon which the policy of insurance
was issued, and differed from it in no respect with the ex-
ception of the factory number. It appears that the means
of knowledge of the substitution of the new car for the one
described in the policy was accessible to the *Liability Com-
pany* at all times. It had issued another policy of insurance
upon the car described in the policy, which had been trans-
ferred by *Gold* to his brother. This occurred on August
9, 1916. On August 14, 1916, *Gold* reported the accident
upon the blank furnished by the company, but failed to give

the factory number of the car as required.   On November
25th a coroner's inquest was held, upon which the defend-
ant *Gold* gave testimony showing the substitution of the
new car and its factory number and the removal of the li-
cense obtained from the old car to the new car without noti-
fying the authorities.   It appears that a transcript of this
testimony was in use upon the first trial.   The *Liability
Company* first demurred to the complaint for insufficiency
on the ground that its policy contract covered only injuries
to passengers and not to pedestrians, and upon the further
ground that the *Liability Company* could not be joined as a
party defendant with the insured.   At the same time coun-
sel for the company appeared on behalf of the defendant
*Gold* and moved the court to strike out those portions of
the complaint alleging a cause of action against the *Liability
Company*.   On June 30, 1917, the order was sustained.
The plaintiff appealed to this court, where the order sus-
taining the demurrer was reversed.   The cause being re-
mitted, the *Liability Company* served a verified answer ad-
mitting that *Gold* at the time of the accident carried the
policy contract of insurance alleged in the complaint and
that he held his certificate from the railroad commission
permitting him to operate as a bonded carrier and that his
state license, motor vehicle factory number, and serial num-
ber are as set up in the complaint, and set up the defense
that he was not then operating under the policy contract
but was in pursuit of his private business.   The first trial
of the action was begun May 24, 1918, and upon that
trial the application for leave to amend the complaint,
passed upon in 169 Wis. 494, 173 N. W. 325, was made.
Before the second trial and on January 12, 1920, the appli-
cation was renewed.   No concealment was practiced upon
the defendant *Liability Company* either by the plaintiff or
by *Gold*.   *Gold* apparently was of the opinion that his in-
surance policy covered his liability, for the reason that he
promptly reported the happening of the accident to the

*Liability Company.* If, as now claimed by the *Liability Company,* its policy was not applicable, it should have seasonably asserted its freedom from liability upon that ground. It chose, however, to litigate first the question of whether or not it could properly be joined, which could only be done by an admission that its policy of insurance was applicable. It then litigated the question of whether or not *Gold* was in the course of his business as a bonded carrier, and it was not until late in the course of the first trial that any attempt was made to assert no liability on the ground that the policy did not cover injuries inflicted by the substituted car. . There having been no concealment, the means of knowledge having been open to the defendant, the same attorney representing both *Gold* and the *Liability Company* upon the first trial down to the time that the amendment was sought, it is considered that the trial court was within the exercise of sound judicial discretion in denying the application for leave to amend.

*By the Court.*—The judgment appealed from is affirmed upon both appeals.

A motion for a rehearing was denied, with $25 costs, on March 14, 1922.