JOSEPH A. DROLETTE ET UX. *v.* HOWARD E. RUSSELL ET AL.

October Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 4, 1933.

*A. Perley Feen* and *Wayne C. Bosworth* for the defendant William A. Harlow.

*Charles I. Button* for the plaintiffs.

POWERS, C. J.   These Russells are husband and wife. Harlow, the other defendant, is Mrs. Russell's father.   On May 5, 1931, the plaintiffs sold and conveyed their farm in Cornwall, together with the stock and equipment, to the Russells for $19,000.   Toward the purchase price, the plaintiffs accepted a deed from Harlow of his house and lot in Bristol, where he and the Russells then lived.   The balance of the purchase price was to be secured by a mortgage on the farm and a chattel mortgage on the personal property that went with it.   All this was known and understood by Harlow, but he was not to be, and was not, a party to these mortgages.   A chattel mortgage was given by the Russells in attempted compliance with the agreement, but owing to a defective description it was inadequate to hold the property against an attaching creditor, as is here admitted.   It was recorded in Cornwall on the day it was executed, but it was never recorded in Bristol.   The plaintiffs, however, retained the possession of the personal property until the Russells moved to Cornwall which was shortly after May 5—not earlier than May 6 or later than May 8—when the possession was surrendered.   The Russells intended when they traded for the farm ·on the 5th to move to Cornwall right away.   At that time it was expected that Harlow would continue to reside with the Russells, and he received from them no consideration for his Bristol place nor any promise of future payment therefor.

At sometime in January, 1932, after the Russells had defaulted, Harlow sued the Russells for the value of the Bristol place and attached the personal property which came to them with the farm.   This suit was collusive and the attachment was made in an attempt by the defendants to defeat the plaintiffs' security on the personal property.

After this attachment was made, this suit in chancery was brought.   It seeks a reformation of the chattel mortgage and its record, and an injunction restraining Harlow from levying an

execution on such personal property. Upon facts found as above, a decree was rendered for the plaintiffs granting the reformation and enjoining Harlow as prayed for. Harlow, alone, appealed. He does not in this Court complain of the decree so far as it grants reformation, but insists that the injunction is unlawfully granted, because of the failure of the plaintiffs to record their chattel mortgage in Bristol.

By the express terms of G. L. 2787, as amended by No. 47, Acts of 1925, this chattel mortgage is not good against Harlow. It is therein provided that such a mortgage "shall not be valid against any person except the mortgagor, his executors and administrators, unless at the time of making such mortgage the possession of the property is delivered to, and actually retained by the mortgagee, or the mortgage is recorded in the office of the clerk of the town in which the mortgagor at the time of making the same resides, * * *." It cannot be successfully denied that the Russells lived in the town of Bristol when this mortgage was executed, and it should have been there recorded. It is true that the plaintiffs retained possession of the personal property until the Russells moved onto the farm, but it was then surrendered to them. This possession to be effective as a substitute for a proper record must continue to the time that the hostile rights are asserted. Nor does the record which was invalid when made become valid on the change of the residence of the mortgagors. It still fails to meet the express requirements of the statute. *Powers* v. *Freeman*, 2 Lans. (N. Y.) 127; *Cappon* v. *O'Day*, 165 Wis. 486, 162 N. W. 655, 1 A. L. R. 1657. Harlow is not estopped from asserting this, for he had nothing whatever to do or say about where the mortgage should be recorded. He said or did nothing to mislead the plaintiffs as to the residence of the Russells.

But the trouble with Harlow's defense is that the chancellor has found in effect that his claim against the Russells is fictitious and trumped up to defeat the rights of the plaintiffs. So, the fact, if it be such, that it is based upon a promise made after discovery of the defective record, makes no difference with it. A contract made for the sole purpose of defeating another's rights will not be allowed to succeed. There being no contract between Harlow and the Russells—and in support of the decree we interpret the finding to exclude an implied as well as an express contract—Harlow should be restrained from now turn-

ing a gift into a contract of sale to the prejudice of the plaintiffs. Such a contract might be good between the parties to it, but in the circumstances here it would amount to an unjust, if not fraudulent, advantage of the plaintiffs which a court of chancery will not tolerate.

*Decree affirmed, and cause remanded.*